# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MARIA JOSE JARABA OLIVEROS,<br>　　　　Plaintiff,<br>　v.<br>POLLY KAISER, et al.,<br>　　　　Defendants. | Case No. 25-cv-07117-BLF<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>[Re: ECF No. 5] |

Before the Court is Petitioner Maria Jose Jaraba Oliveros's ("Petitioner") *Ex Parte* Motion for Temporary Restraining Order. ECF 5. Petitioner filed her Petition for Writ of Habeas Corpus followed by an *Ex Parte* Motion for Temporary Restraining Order against Respondents Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi on August 22, 2025, seeking an order temporarily enjoining Respondents from detaining her until such time as she has had an opportunity to challenge her detention before a neutral decisionmaker.

For the following reasons, the Court GRANTS Petitioner's *Ex Parte* Motion for Temporary Restraining Order.

## I. BACKGROUND

According to the complaint and declarations submitted by the Petitioner, Petitioner Maria Jose Jaraba Oliveros is a 21-year-old asylum seeker who fled Colombia. She was briefly detained by federal agents after entering the United States in December 2023. Determining that she was not a flight risk or a danger to the community, the agents released Petitioner into the community.

Petitioner then moved to San Jose, California, and attended all of her ICE check-ins and

immigration court hearings.  In November 2024, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture.  She received authorization to work and was hired as a housekeeper.  She lives in Martinez, California with her family.

On August 22, 2025, Petitioner appeared in-person at Immigration Court in San Francisco, California for a routine hearing before Immigration Judge Joseph Park.  At that hearing, the Government moved to dismiss the case in order to initiate fast-track "expedited removal" proceedings.  Judge Park did not rule on the motion, instead giving Petitioner an opportunity to respond.  Judge Park transferred the venue to immigration court in Martinez, California.

Minutes after Petitioner left the Courtroom, ICE agents arrested Petitioner and took her into custody at 630 Sansome Street in San Francisco, California.  The agents neither presented a warrant of arrest for Petitioner, nor did they provide an explanation for her arrest.

Petitioner alleges that she will suffer serious and ongoing harm every day she remains in detention.  She suffers from several health conditions, including pityriasis rosea in her right breast, for which she needs access to prescribed medication.  She has chronic sinusitis that manifests in respiratory issues, such that she is sensitive to cold and air quality.  She suffers from vertigo and panic, which makes it difficult for her to be in enclosed spaces, especially when she is alone.  Petitioner is being held in a cold, metal room and is concerned about the impact of the environment on her condition.  She has not been given a blanket.  That the room is enclosed triggers her difficulty with enclosed spaces.  Finally, Petitioner is obese and must manage her nutrition carefully—something she is concerned she will be unable to do in detention.

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)).  An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  And "a TRO 'should be restricted to . . . preserving the status quo and

preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner's counsel has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition.

The Court notes that Respondents were given notice of at least four hours prior to Petitioner's submission of her request for TRO and Respondents have not filed any response. Weiner Decl. ¶ 4, 5.

The Court finds that Petitioner has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in her favor. *Weber*, 767 F.3d at 942. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Courts have

previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond. *See Ortiz Vargas v. Jennings*, No. 20-cv5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id*. at 335—require that Petitioner be immediately released from custody, and that she be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody. Petitioner has a substantial private interest in remaining out of custody, which would allow her to live at home, work, obtain necessary medical care, and continue to provide for her family. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. And, like other courts in this district, this Court concludes that the government's interest in re-detaining Petitioner without a hearing is "low," particularly in light of the fact that Petitioner has appeared for her prior immigration hearings and she does not have a criminal record. *See Jorge M.F.*, 2021 WL 783561, at *3; Ortega, 415 F. Supp. 3d at 970.

Petitioner is also likely to suffer immediate and irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized "irreparable harms imposed on anyone

subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions,* 872 F.3d 976, 995 (9th Cir. 2017). Those risks are present here. As previously described, Petitioner has serious medical conditions that are likely to be exacerbated in detention. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

        Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioner's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); see also *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Without the requested injunctive relief, Petitioner faces the danger of significant health consequences and deprivation of her liberty. Yet the comparative harm potentially imposed on Respondents is minimal—a mere short delay in detaining Petitioner, should the government ultimately show that detention is intended and warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

        This Court therefore joins a series of other district courts that have recently granted temporary restraining orders barring the government from detaining noncitizens who have been on longstanding release in their immigration proceedings, without first holding a pre-deprivation hearing before a neutral decisionmaker. *See, e.g., Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025). Although Petitioner filed her motion shortly after being detained, rather than immediately beforehand, the same reasoning applies to her situation. Her liberty

5

interest is equally serious, the risk of erroneous deprivation is likewise high, and the government's interest in continuing to detain her without the required hearing is low. *See Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025) (granting a TRO as to an individual who had been detained over a month earlier).

Petitioner's immediate release is required to return her to the status quo. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to the Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-CV-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Accordingly, the Court hereby GRANTS Petitioner's *Ex Parte* Motion for a Temporary Restraining Order. Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). In this case, in light of the minimal risk of harm to the government, the Court determines that security is not required.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Petitioner's *Ex Parte* Motion for Temporary Restraining Order is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ENJOINED from transferring Petitioner out of this district or deporting her pending these habeas proceedings.

6

1  (3) Respondents are ORDERED to immediately release Petitioner from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker.  This Order shall remain in effect until September 5, 2025.

(4) The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents such that they receive actual notice as soon as practicable, and no later than August 23, 2025, at 5:00 p.m., and Petitioner shall file proof of such service by no later than August 26, 2025, at 5:00 p.m.  Email service is permitted.

(5) Respondents shall provide a status report confirming Petitioner's release by August 26, 2025, at 5:00 p.m.

(6) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing before the undersigned on August 28, 2025, at 9:00 a.m., why a preliminary injunction should not issue. Respondents shall file a response to Petitioner's motion by no later than August 26, 2025, at 12:00 p.m.  No reply shall be filed.

Dated:  August 22, 2025

_____
BETH LABSON FREEMAN
United States District Judge

7