**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARIA JOSE JARABA OLIVEROS,<br>Petitioner,<br>v.<br>POLLY KAISER, et al.,<br>Respondents. | Case No. 25-cv-07117-BLF<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Petitioner Maria Jose Jaraba Oliveros ("Petitioner") filed this Petition for Writ of Habeas Corpus against Respondents Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pam Bondi (collectively, "Respondents" or "Government") on August 22, 2025. ECF No. 1, Petition for Writ of Habeas Corpus ("Pet."). Petitioner simultaneously filed her *Ex Parte* Motion for Temporary Restraining Order ("TRO"). ECF No. 5; ECF No. 6 ("Mot."). On the same day, the Court issued a TRO requiring the Government to immediately release Petitioner and enjoining and restraining it from re-detaining her without notice and a pre-deprivation hearing before a neutral decision maker. ECF No. 7 at 6–7. The Court ordered the TRO to remain in effect until September 5, 2025. *Id.* On August 26, 2025, the Government notified the Court that Petitioner was released from the custody of United States Immigration and Customs Enforcement on August 22, 2025, pursuant to the TRO. ECF No. 9.

Now before the Court is Petitioner's Motion for a Preliminary Injunction. Respondents filed an Opposition to Petitioner's Motion for Preliminary Injunction. ECF No. 10 ("Opp."). Petitioner requested leave to file a reply, ECF No. 11, which the Court granted, ECF No. 12.

Petitioner then filed a Reply to Respondents' Opposition. ECF No. 13 ("Reply"). The Court held a hearing on August 28, 2025. ECF No. 15. Without objection, the TRO was continued in force until September 19, 2025. ECF No. 16. For the reasons that follow, the Court GRANTS Petitioner's Motion for a Preliminary Injunction.

## I. BACKGROUND

Petitioner is a 21-year-old asylum seeker who is a citizen of Colombia. Pet. ¶ 11. She left Colombia after she was threatened by criminal groups. ECF No. 6-2, Declaration of P.F. Gonzalez Montes De Oca ("Gonzalez Montes De Oca Decl.") ¶ 8.

Petitioner suffers from a number of health conditions. She has sinusitis, a condition that causes respiratory issues and is aggravated by the cold. Pet. ¶ 57; Gonzalez Montes De Oca Decl. ¶ 9. She also has pityriasis rosea on her breast and needs a prescription medication to manage the condition. Pet. ¶ 57; Gonzalez Montes De Oca Decl. ¶ 9. Petitioner experiences vertigo and panic, which makes it difficult for her to be in enclosed spaces, especially alone. Pet. ¶ 57; Gonzalez Montes De Oca Decl. ¶ 10.

On December 9, 2023, Petitioner entered the United States without inspection, admission, or parole. ECF No. 10-1, Declaration of Deportation Officer Julio Razalan ("Razalan Decl.") ¶ 5. Petitioner was apprehended by a Border Patrol Agent in the Del Rio Sector region of Texas. Razalan Decl. ¶ 5, Ex. 2. She was transported to a Border Patrol Station for processing. Razalan Decl. Ex. 2. Petitioner explained she was fearful of returning to Colombia. *Id.*

On December 10, 2023, Petitioner was released on recognizance pending her immigration court proceedings after the Department of Homeland Security ("DHS") determined that she posed neither a flight risk nor a danger to the community. Pet. ¶ 48; Razalan Decl. ¶ 6, Exs. 4, 5. On the same day, DHS issued five documents: (1) Form I-862 Notice to Appear, (2) Form I-213 Record of Deportable/Inadmissible Alien, (3) Form I-200 Warrant for Arrest, (4) Form I-286 Notice of Custody Determination, and (5) Form I-220A Order of Release on Recognizance. Razalan Decl. ¶ 4, Exs. 1, 2, 3, 4, 5.

The Notice to Appear stated that Petitioner was not "admitted or paroled," and instructed Petitioner to appear before an immigration judge on August 22, 2025, in San Francisco,

1   California. Razalan Decl. Ex. 2 ("Notice to Appear"). The Order of Release on Recognizance,

2   Warrant for Arrest, and Notice of Custody Determination were all issued pursuant to 8. U.S.C.

3   § 1226 (§ 1226). Razalan Decl. Ex. 3 ("2023 Warrant"), Ex. 4 ("Notice of Custody

4   Determination"), Ex. 5 ("Order of Release").

5         Once released, Petitioner moved to California, where she has lived for nearly two years.

6   Pet. ¶ 49. In November 2024, Petitioner applied for asylum, withholding of removal, and

7   protection under the Convention Against Torture. *Id.* ¶ 50. She received authorization to work and

8   found a job as a housekeeper. *Id.*

9         On August 22, 2025, as instructed, Petitioner appeared at the San Francisco Immigration

10   Court for her scheduled hearing before Immigration Judge ("IJ") Joseph Park. Pet. ¶ 52; ECF No.

11   6-1, Declaration of Amanda Maya ("Maya Decl.") ¶¶ 2–3. IJ Park informed Petitioner that the

12   Government had moved to dismiss her case. Pet ¶ 52; Maya Decl. ¶ 3. IJ Park did not immediately

13   rule on the motion to dismiss and instead gave Petitioner time to respond. Pet. ¶ 52; Maya Decl.

14   ¶ 3. IJ Park also transferred venue to Martinez, California, which is closer to Petitioner's home.

15   Pet. ¶ 52.

16         Immediately after the hearing, U.S. Immigration and Customs Enforcement ("ICE")

17   Agents arrested Petitioner outside of the courtroom pursuant to a Warrant of Arrest. Pet. ¶ 53;

18   Razalan Decl. Ex. 7 ("2025 Warrant"). The 2025 Warrant was issued under 8 U.S.C. § 1226. 2025

19   Warrant. Petitioner remained in ICE custody until she was released on August 22, 2025, pursuant

20   to the Court's Order. Razalan Decl. ¶ 10; ECF No. 9.

21   **II.   LEGAL STANDARD**

22         An injunction is a matter of equitable discretion and is "an extraordinary remedy that may

23   only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat.*

24   *Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief

25   must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer

26   irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his

27   favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show

28   that there are serious questions going to the merits—a lesser showing than likelihood of success on

3

the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (alteration in original) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Petitioner is Likely to Succeed on the Merits

The first *Winter* factor asks whether the Plaintiff is "likely to succeed on the merits" of his claims. *Winter*, 555 U.S. at 20. Petitioner argues that her detention violates substantive due process because she is neither a flight risk nor a danger to the community. Mot. at 11–13. Petitioner also argues that her procedural due process rights would be violated if she is deprived of the opportunity to contest her detention before a neutral decisionmaker. *Id.* at 13–17.

In response, Respondents argue that Petitioner cannot show a likelihood of success on her claim that she is entitled to a custody hearing before a neutral decisionmaker because her detention is mandatory under the relevant statutory scheme. Opp. at 9–12. Respondents argue that the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), does not apply. *Id.* at 12–14.

Respondents further argue that, in enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress did not intend to treat individuals like Petitioner who entered the United States unlawfully better than aliens who appear at a port of entry. *Id.* at 14–15. Respondents also argue that even noncitizens subject to § 1226(a) are not guaranteed Immigration Judge review of detention prior to being detained. *Id.* at 15. Respondents further argue that Petitioner cannot obtain an injunction prohibiting her transfer because the Attorney General has discretion to determine the appropriate place of detention. *Id.* at 15–16.

The Court addresses the Parties' arguments in turn.

#### i. Petitioner Has Shown that She Has Been Conferred a Protected Liberty Interest through the Government's Actions

Petitioner argues that she has a protected liberty interest because she was placed in full removal proceedings and released from immigration custody by the affirmative act of the Government. Mot. at 14; Reply at 2–4.

4

Respondents argue that Petitioner is an "applicant for admission" because she was neither "admitted or paroled" into the United States and is therefore subject to 8 U.S.C. § 1225's ("§ 1225") mandatory detention framework. Opp. at 8. Respondents also argue that because Petitioner was not "physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," she is subject to expedited removal proceedings, despite the DHS's initially electing to place her in § 1229(a) removal proceedings. Opp. at 8. Respondents argue that 8 U.S.C. § 1225 mandates Petitioner's detention because she is a noncitizen subject to expedited removal. *Id.* at 9–12.

8 U.S.C. § 1225 provides that an alien who "arrives in the United States," or "[is] present" in this country but "has not been admitted," is "an applicant for admission." *Id.* § 1225(a)(1). 8 U.S.C. § 1225(b)(1)(A) provides that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." *Id.* § 1225(b)(1)(A)(i). § 1225(b)(1) applies to an alien who "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* § 1225(b)(1)(A)(iii)(II). 8 U.S.C. § 1225(b)(2)(A) provides that "[s]ubject to [scenarios that do not apply here], in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."

While "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)[,] [i]t also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Under 8 U.S.C. § 1226(a) ("§ 1226(a)"), for an alien who is "arrested and detained pending a decision on whether the alien is to be removed from the United States," the Attorney General "may continue to detain the arrested alien," "may release the alien" on "bond," or "may release the alien" on "conditional parole." 8

5

1 U.S.C. § 1226(a)(1)–(2).

2 As a threshold matter, Respondents argue that "§ 1225 is the sole applicable immigration detention authority for *all* applicants for admission." Opp. at 11. The Court notes that this position is a shift from "DHS's longstanding interpretation" of § 1226(a) as "appl[ying] to those who have crossed the border between ports of entry and are shortly thereafter apprehended." *Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238, at *7 n.9 (D. Mass. July 24, 2025) (citing Transcript of Oral Argument 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)).

Citing "legal developments," the Government argues that it is now Respondents' position that all applicants for admission are subject to mandatory detention under § 1225(b). Opp. at 11. On reply, Petitioner argues that she is currently subject to § 1226(a)'s discretionary detention scheme. Reply at 4–6. She argues that it is uncontested that Petitioner is in full removal proceedings, Respondents' own exhibits reflect that Petitioner is subject to § 1226(a), and discretionary detention governs those who are already in the country and are awaiting the outcome of their removal proceedings. *Id.*

The Court is not persuaded by the Government's position that § 1225 is the only applicable immigration detention authority for all applicants for admission and controls in this case. The record unequivocally shows that the Government affirmatively placed Petitioner in full removal proceedings under 8 U.S.C. § 1229a and released her under § 1226(a), not § 1225(b). *See* Notice to Appear; 2023 Warrant; Notice of Custody Determination; Order of Release. Each document was explicitly authorized pursuant to section 236 of the Immigration and Nationality Act—i.e., § 1226. This evidence shows that Respondents have consistently, indeed as recently as this past month, treated Petitioner as subject to detention on a discretionary basis under § 1226(a). 2025 Warrant; *see also Gomes v. Hyde*, No. 25-cv-11571-JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) ("Section 1226(a) establishes a discretionary detention framework . . . ."). Having elected to proceed with full removal proceedings under § 1226, Respondents cannot now declare they are overwriting the record and institute § 1225 expedited removal proceedings.

Furthermore, the Court is persuaded by the reasoning in *Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025). There, the court held that as a matter of

6

1   statutory authority, "the Government cannot simply switch tracks" from § 1226(a) to § 1225(b)(2).
2   *Id.* at *8; *accord Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *7–9
3   (S.D.N.Y. Aug. 13, 2025); *Gomes*, 2025 WL 1869299, at *1. The *Aceros* court examined the text,
4   structure, agency application, and legislative history of § 1225 and concluded that § 1225(b)(2) does
5   not apply to noncitizens who have been released by DHS on their own recognizance into the interior
6   of the United States. *Aceros*, 2025 WL 2637503, at *8–12.

Although Respondents attribute their novel position to an "ongoing evolution of the law," they cite no recent authority to support their assertion. Opp. at 11. Nor is the Court aware of any. Thus, this Court joins others in concluding it cannot credit Respondents' new position as the basis for Petitioner's detention, which was raised for the first time in this litigation and adopted only after it elected to subject Petitioner to § 1226(a). *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *4–5; *Martinez*, 2025 WL 2084238, at *2–8; *Espinoza v. Kaiser*, No. 1:25-CV-01101-JLT, 2025 WL 2581185, at *10 (E.D. Cal. Sept. 5, 2025) ("Respondents fail to contend with the liberty interests created by the fact that the Petitioners in this case were released on recognizance *prior to the manifestation of this* [novel statutory] *interpretation*.").

Respondents' election to place Petitioner in full removal proceedings under § 1229a and to release Petitioner under § 1226(a) provided Petitioner a liberty interest that is protected by the Due Process Clause. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) ("[I]ndividuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.").

At the hearing, Respondents requested that the Court consider the applicability of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). Having done so, the

7

1   Court is not persuaded by Respondents' reliance on that case. Opp. at 13–14. In *Thuraissigiam*, the
2   noncitizen crossed the southern boarder without inspection or any entry document, was apprehended
3   by a Border Patrol agent within 25 yards of the border, was never released from custody, and was
4   placed in expedited removal proceedings pursuant to § 1225(b). *See Thuraissigiam*, 591 U.S. at 114.
5   After an asylum officer denied the noncitizen's asylum request, the noncitizen filed a federal habeas
6   petition, requesting "a writ of habeas corpus, an injunction, or a writ of mandamus directing [the
7   Department] to provide [him] a new opportunity to apply for asylum and other applicable forms of
8   relief." *Id.* at 115 (alterations in original) (citation omitted). The Supreme Court found the
9   noncitizen's claim for habeas corpus seeking additional review of his asylum claim was beyond the
10  scope established for habeas corpus under the Suspension Clause. *Id.* at 127. As another court in
11  this district observed, the petition at issue in *Thuraissigiam* made no mention of release from
12  custody. *Aceros*, 2025 WL 2637503, at *6. Accordingly, the holding bears on "the right to additional
13  due process sought over admission determinations. It does not address the due process rights of a
14  noncitizen to remain free once released." *Id.*

15  Unlike *Thuraissigiam*, here, Petitioner was placed in full removal proceedings and DHS
16  affirmatively released Petitioner under the discretionary framework pursuant to § 1226(a). *See*
17  Notice to Appear; 2023 Warrant; Notice of Custody Determination; Order of Release. In
18  *Thuraissigiam*, the petitioner sought a new opportunity to apply for asylum. *Thuraissigiam*,
19  591 U.S. at 115. Here, the issue is whether Petitioner has the due process right to remain free from
20  custody.

21  Because Respondents decided to proceed with Petitioner's immigration case under § 1226(a)
22  and released Petitioner on her own recognizance, Petitioner has a protected liberty interest, and the
23  Due Process Clause protects her from unlawful detention. *See Zadvydas v. Davis*, 533 U.S. 678, 693
24  (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process
25  Clause applies to all 'persons' within the United States, including aliens, whether their presence
26  here is lawful, unlawful, temporary, or permanent.").

27        **ii.**   **Petitioner Has Shown That She Faces a Substantial Risk of Erroneous**

28

**Deprivation of Her Liberty Interest**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond. *See Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Bonnar*, 415 F. Supp. 3d at 969; *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

### a. Substantive Due Process

As an initial matter, Petitioner brings a substantive due process challenge to her detention. Mot. at 11–13. Petitioner argues that there is no credible argument that she is either a danger to the community or a flight risk. *See id.* at 12–13. The Court notes that Respondents do not make any arguments to the contrary.

The Court need not address Petitioner's substantive due process claim at this stage because granting a preliminary injunction enjoining Respondents from detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker averts "the threat of any imminent deprivation of her substantive due process rights." *Pinchi*, 2025 WL 2084921, at *2 n.1.

### b. Procedural Due Process

Petitioner argues that Respondents violated her procedural due process rights by depriving her of the opportunity to contest her arrest and detention before a neutral decisionmaker. Mot. at 14–16. Petitioner argues that she has "established a protected liberty interest," that weighs strongly in favor of granting her the sought-after injunctive relief under the three-factor *Mathews* test. *Id.*

In response, Respondents argue that the *Mathews* factors do not apply because the Supreme Court has never applied them "in addressing due process claims raised by noncitizens held in civil immigration detention." Opp. at 12. Respondents further argue that Petitioner is subject to expedited removal and she "cannot assert a protected property or liberty interest in additional procedures not provided by the statute." *Id.* at 13.

  In *Mathews*, the Supreme Court explained that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. The Supreme Court set out three factors relevant to the due process inquiry—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335.

  At the hearing, Respondents requested that the Court take under consideration *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* factors to a procedural due process challenge to immigration detention under 8 U.S.C. § 1226(a). The Ninth Circuit faced the question of whether a noncitizen detained under § 1226(a) pending removal proceedings had a right to a second bond hearing where the government would have the burden to establish by clear and convincing evidence that his continued detention was justified. *Id.* at 1193. The court held the noncitizen detained pursuant to § 1226(a) did not have the right to a second bond hearing. *Id.* at 1213–14. In its analysis, the Ninth Circuit explained that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Id.* at 1206. While the Ninth Circuit "assume[d] without deciding" that the *Mathews* factors applied, the Ninth Circuit nonetheless explained that "other circuits (reaching conflicting outcomes) have applied the *Mathews* test" in due process challenges to § 1226(a). *Id.* at 1204–07.

  The Court notes that other courts in this Circuit regularly apply *Mathews* to due process challenges in the immigration context. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *3; *Singh v. Andrews*, No. 25-CV-00801-KES-SKO, 2025 WL 1918679, at *6–8 (E.D. Cal. July 11, 2025); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4–6 (N.D. Cal. July 17, 2025); *Aceros*, 2025 WL 2637503, at *5–13.

  Furthermore, the Ninth Circuit did *not* hold that noncitizens facing removal under § 1226(a) have no due process right to a pre-detention hearing. As another court in this district explained,

10

"[b]ecause the question presented here was not presented in *Rodriguez Diaz*, the court had no opportunity to address it." *Pinchi*, 2025 WL 2084921, at *4.

Nor is the Court persuaded by Respondents' assertion that the Supreme Court has upheld the constitutionality of an initial custody determination that is only later reviewed by an Immigration Judge. Opp. at 15. In support of this general proposition, Respondents refer the Court to cases that are factually far afield. *Id.* (citing *Abel v. United States*, 362 U.S. 217, 233–34 (1960)).

Here, on December 10, 2023, Respondents placed Petitioner in full removal proceedings under § 1229a and released her on her own recognizance pursuant to § 1226(a). *See* 2023 Warrant; Notice of Custody Determination; Order of Release. Petitioner was again arrested on August 22, 2025, by ICE pursuant to a Warrant for Arrest (Form I-200) under § 1226(a). *See* 2025 Warrant. The Court will accordingly join other courts in the Ninth Circuit and apply the *Mathews* factors to determine the constitutionally sufficient procedures to protect Petitioner's liberty interest. Although Respondents seek to undo their own election to place Petitioner into full removal proceedings, including all of the rights obtained under § 1226, this Court finds that § 1225 is inapplicable as a consequence of Respondents' own actions.

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because she has been released pending civil removal proceedings. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Petitioner, who has serious medical conditions, has an interest in remaining in her home, being with her family members, and monitoring her medical conditions out of immigration custody. *See Diaz*, 2025 WL 1676854, at *3 (holding that petitioner had a substantial private interest in remaining out of immigration custody for him to work, live at home, and be with family and friends to "form the enduring attachments of normal life" (citation omitted)).

As to the second *Mathews* factor, the Court finds that there is a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Here, neither Petitioner nor Respondents had an opportunity to determine whether any valid basis exists for her detention because Petitioner has not received any bond or custody hearing. *See Singh*, 2025 WL 1918679, at *7. Additionally, because Petitioner's substantial liberty interest is at stake,

11

due process also requires Respondents to prove "by clear and convincing evidence that [Petitioner] is a flight risk or danger to the community" before depriving her of that liberty. *Id.* at *8.

Here, Respondents have not shown any evidence that Petitioner is a flight risk or a danger to the community. Indeed, after Petitioner was released from immigration custody in December 2023, she attended her master calendar hearing with the San Francisco Immigration Court 20 months later, in August 2025. *See* Maya Decl. ¶¶ 2–3; Gonzalez Montes De Oca Decl. ¶ 3; Razalan Decl. ¶ 7. Thus, the Court finds that this factor favors Petitioner.

As to the third *Mathews* factor, Petitioner has no criminal record and attended the required hearing in immigration court after DHS released her on her own recognizance in December 2023. *See* Pet. ¶ 51; Maya Decl. ¶ 3; Gonzalez Montes De Oca Decl. ¶ 3; Razalan Decl. ¶ 7. Petitioner is gainfully employed in California. Pet. ¶ 50. The Court notes that Respondents do not claim any change in material circumstances that would warrant reassessment of Petitioner's fight risk or danger to the community. Thus, the Court finds that Respondents' interest in detaining Plaintiff without a hearing is low.

For the above reasons, the Court finds that each of the *Mathews* factors favors Petitioner. Petitioner thus has shown a likelihood of success on the merits of her claim that she is entitled to a pre-deprivation hearing before a neutral decisionmaker prior to any re-arrest or detention under the Due Process Clause.

### c. Petitioner Can Obtain an Injunction Prohibiting Her Transfer to Another District

Petitioner seeks an injunction that "prohibits the government from transferring her out of this District . . . until these habeas proceedings have concluded." Mot. at 19. Respondents argue that Petitioner cannot obtain an injunction prohibiting her transfer because "[t]he Attorney General has discretion to determine the appropriate place of detention." Opp. at 15–16. Respondents contend that Petitioner has not shown "any transfer would interfere with the ability to present her case or access counsel more than any other similarly situated detainee." *Id.* at 16.

8 U.S.C. § 1252(a)(2)(B)(ii) precludes the exercise of federal court jurisdiction "to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security

1   the authority for which is specified under this subchapter to be in the discretion of the Attorney
2   General or the Secretary of Homeland Security." 8 U.S.C. § 1231(g) ("§ 1231(g)") provides that
3   "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending
4   removal or a decision on removal." In *Ozturk*, the Second Circuit found that "'§ 1231(g) does not
5   address transfers of noncitizen detainees *at all*,' and it surely does not '*explicitly grant* the Attorney
6   General or the Secretary of Homeland Security discretion with respect to transfers.'" *Ozturk v. Hyde*,
7   136 F.4th 382, 396 (2d Cir. 2025) (cleaned up) (quoting *Reyna as next friend of J.F.G. v. Hott*, 921
8   F.3d 204, 209 (4th Cir. 2019)); *see Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of
9   Homeland Sec.*, 510 F.3d 1, 20 (1st Cir. 2007) (explaining that § 1231(g) "fails to 'specify' that
10  individualized transfer decisions are in the Attorney General's discretion"). Thus, the Court finds
11  that the statute does not specifically provide the Attorney General the discretion to decide
12  Petitioner's place of detention.

13  The Court has "'inherent authority to protect its proceedings,' and to 'meet new situations
14  which demand equitable intervention, and to accord all the relief necessary to correct the particular
15  injustices involved in these situations.'" *Ozturk*, 136 F.4th at 394–95 (cleaned up) (quoting *Degen
16  v. United States*, 517 U.S. 820, 823 (1996); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S.
17  238, 248 (1944)).

18  Here, the Court finds that equities strongly favor Petitioner remaining in this District pending
19  the resolution of this matter because this will expedite resolution of this matter, provide Petitioner
20  ready access to medical and legal services, and address concerns about the conditions of her
21  detention. *See Ozturk v. Trump*, 779 F. Supp. 3d 462, 496 (D. Vt.), *amended sub nom. Ozturk
22  v. Hyde*, 136 F.4th 382 (2d Cir. 2025). Thus, pursuant to the Court's inherent power, the Court orders
23  that in the event of re-detention, Respondents shall not remove Petitioner from this District pending
24  the resolution of this matter.

25  **B.   Petitioner Has Shown Irreparable Harm**

26  Petitioner argues that she will suffer "immense irreparable injury" if she is in ICE detention.
27  Mot. at 17. Petitioner argues that "the unlawful deprivation of physical liberty is the quintessential
28  irreparable harm." *Id.* Petitioner argues that her arrest and detention is causing irreparable harms in

13

connection with her serious medical conditions. *Id.* at 17–18.

In response, Respondents argue that Petitioner has failed to meet her burden of establishing that she will suffer irreparable harm absent a preliminary injunction. Opp. at 16. Respondents argue that Petitioner's assertion of "serious medical conditions" is contradicted by the record. *Id.* Additionally, Respondents argue that Petitioner's alleged injury of "unlawful deprivation of physical liberty" is "essentially inherent in detention." *Id.* (quoting *Lopez Reyes v. Bonnar*, No 18-cv-07429-SK, 2018 WL 7474861, at *10 (N.D. Cal. Dec. 24, 2018)).

The Court finds that Petitioner has shown that she is likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief. The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

Here, Petitioner has serious medical conditions that are likely to be exacerbated in detention despite a superficial "appear[ance]" of "good health." Razalan Decl. Ex. 6. Petitioner has sinusitis. Pet. ¶ 57; Gonzalez Montes De Oca Decl. ¶ 9. She also has pityriasis rosea, which she needs access to medication to manage. Pet. ¶ 57; Gonzalez Montes De Oca Decl. ¶ 9. And Petitioner suffers from vertigo and panic, which makes it difficult for her to be in enclosed spaces. Pet. ¶ 57; Gonzalez Montes De Oca Decl. ¶ 10. Thus, Petitioner has demonstrated that the consequences of her re-detention would be serious and irreparable.

Further, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994-95 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (cleaned up). As discussed, if Petitioner is re-detained without a pre-detention hearing before a neutral decisionmaker, the deprivation of liberty that Petitioner faces is likely unconstitutional and is an immediate and irreparable harm. *Hernandez*, 872 F.3d at 995 (holding Plaintiffs have met their burden to show irreparable harm that they "will

likely be deprived of their physical liberty unconstitutionally in the absence of the injunction").

### C. The Balance of Equities and Public Interest Favor an Injunction

The third *Winter* factor considers whether "the balance of equities tips" in the movant's favor. *Winter*, 555 U.S. at 20. The fourth *Winter* factor considers whether an injunction is in the public interest. *Id.* When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).

Petitioner argues that the balance of equities favors her because she would face "irreparable injury in the form of ongoing constitutional violations and continued additional suffering if the TRO is not granted" if she is re-detained by DHS. Mot. at 18. Petitioner further argues that there is a strong public interest to protect against unlawful detention and to prevent the violation of her constitutional rights. *Id.* In response, Respondents argue that the Government "has a compelling interest in the steady enforcement of its immigration laws." Opp. at 17.

The Court finds that the balance of equities tips heavily in Petitioner's favor, and the public interest favors an injunction. The public has an interest in the orderly and efficient administration of this country's immigration laws "but also has a strong interest 'in upholding procedural protections against unlawful detention.'" *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *10 (N.D. Cal. July 17, 2025) (quoting *Vargas v. Jennings*, 2020 WL 5074312, at *4). "[T]the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, 2021 WL 783561, at *3 (cleaned up) (quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Here, the Court finds that the potential harm to Petitioner is significant, while the potential harm to Respondents is minimal. As discussed above, without the requested preliminary injunctive relief, detention poses a significant threat to Petitioner's health and liberty interest. Respondents risk only a short delay in detaining Petitioner if Respondents ultimately show that detention is warranted. Further, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration

15

proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

"Faced with a choice 'between minimally costly procedures and preventable human suffering,' . . . the Court concludes 'that the balance of hardships tips decidedly in petitioner's favor.'" *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996).

\* \* \*

For the above reasons, all four *Winter* factors favor issuing Petitioner's requested injunction preventing Respondents from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker.

### D. Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to Respondents resulting from the preliminary injunction, the Court finds it appropriate to issue the preliminary injunction without requiring security.

### IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Court GRANTS a Preliminary Injunction.
2. Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker where the Government bears the burden of proving by clear and convincing evidence that changed circumstance render her a danger to the community or a flight risk, and that no conditions other than her detention would be sufficient to prevent such

harms.

3. Respondents are ENJOINED from transferring Petitioner out of this district or deporting her pending these habeas proceedings.
4. This Preliminary Injunction SHALL remain in force throughout the pendency of this action unless earlier modified by the Court.

Dated: September 18, 2025

_____
BETH LABSON FREEMAN
United States District Judge