**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARIA JOSE JARABA OLIVEROS, | Case No. 25-cv-07117-BLF |
| Petitioner, | |
| v. | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| POLLY KAISER, et al., | [Re: ECF No. 1] |
| Respondents. | |

On August 22, 2025, Petitioner Maria Jose Jaraba Oliveros was seized by U.S. Immigration and Customs Enforcement ("ICE"), a division of the Department of Homeland Security ("DHS"), at an immigration hearing at the San Francisco Immigration Court. Ms. Oliveros is an asylum-seeker who has lived and worked in the United States since 2023. She filed this petition for a writ of habeas corpus, arguing that her detention violated her rights. *See* ECF No. 1 ("Pet."); *see also* ECF No. 23 ("Traverse"). Respondents submitted a return in opposition. ECF No. 22 ("Return"). The Parties jointly waived a hearing on the merits of the petition and submitted the matter for decision based on the record before the Court. ECF No. 25. For the reasons that follow, the habeas petition is GRANTED.

## I. BACKGROUND

At the time this action was filed, Petitioner was a 21-year-old asylum seeker who is a citizen of Colombia. Pet. ¶ 11. She left Colombia after she was threatened by criminal groups. ECF No. 6-2, Declaration of P.F. Gonzalez Montes De Oca ("Gonzalez Montes De Oca Decl.") ¶ 8. On December 9, 2023, Petitioner entered the United States without inspection, admission, or parole. ECF No. 10-1, Declaration of Deportation Officer Julio Razalan ("Razalan Decl.") ¶ 5. Petitioner was apprehended by a Border Patrol Agent in the Del Rio Sector region of Texas.

Razalan Decl. ¶ 5 & Ex. 2.  She was transported to a Border Patrol Station for processing.  Razalan Decl. Ex. 2.  Petitioner explained that she was fearful of returning to Colombia.  *Id.*

On December 10, 2023, Petitioner was released on recognizance pending her immigration court proceedings after the Department of Homeland Security ("DHS") determined that she posed neither a flight risk nor a danger to the community.  Pet. ¶ 48; Razalan Decl. ¶ 6 & Exs. 4, 5.  On the same day, DHS issued five documents: (1) Form I-862 Notice to Appear,;(2) Form I-213 Record of Deportable/Inadmissible Alien; (3) Form I-200 Warrant for Arrest; (4) Form I-286 Notice of Custody Determination; and (5) Form I-220A Order of Release on Recognizance.  Razalan Decl. ¶ 4 & Exs. 1–5.  The Notice to Appear stated that Petitioner was not "admitted or paroled," and instructed Petitioner to appear before an immigration judge on August 22, 2025, in San Francisco, California.  Razalan Decl. Ex. 1 ("Notice to Appear").  The Order of Release on Recognizance, Warrant for Arrest, and Notice of Custody Determination were all issued pursuant to 8 U.S.C. § 1226 (§ 1226).  Razalan Decl. Ex. 3 ("2023 Warrant"), Ex. 4 ("Notice of Custody Determination"), Ex. 5 ("Order of Release").  Once released, Petitioner moved to California.  Pet. ¶ 49.  In November 2024, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture.  *Id.* ¶ 50.  She received authorization to work and found a job as a housekeeper.  *Id.*

On August 22, 2025, as instructed, Petitioner appeared at the San Francisco Immigration Court for her scheduled hearing before Immigration Judge Joseph Park.  Pet. ¶ 52; ECF No. 6-1, Declaration of Amanda Maya ("Maya Decl.") ¶¶ 2–3.  Immigration Judge Park informed Petitioner that the Government had moved to dismiss her case.  Pet ¶ 52; Maya Decl. ¶ 3.  Immigration Judge Park did not immediately rule on the motion to dismiss and instead gave Petitioner time to respond.  Pet. ¶ 52; Maya Decl. ¶ 3; Razalan Decl. ¶ 7.

Immediately after the hearing, ICE Agents arrested Petitioner outside of the courtroom pursuant to a Warrant of Arrest.  Pet. ¶ 53; Razalan Decl. ¶ 8 & Ex. 7 ("2025 Warrant").  The 2025 Warrant was issued pursuant to § 1226.  2025 Warrant.  The same day, Petitioner filed a petition for a writ of habeas corpus against Respondents Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the

Department of Homeland Security Kristi Noem, and United States Attorney General Pam Bondi (collectively, "Respondents" or the "Government").  Petitioner simultaneously filed her *Ex Parte* Motion for Temporary Restraining Order.  *See* ECF Nos. 5, 6.  The Court issued a Temporary Restraining Order ("TRO") requiring the Government to immediately release Petitioner and enjoining and restraining it from re-detaining her without notice and a pre-deprivation hearing before a neutral decision maker.  ECF No. 7.  Petitioner was released from ICE custody on August 22, 2025, pursuant to the TRO.  ECF No. 9.  Without objection, the TRO was continued in force until September 19, 2025.  ECF No. 16.

On September 2, 2025, the Immigration Judge granted ICE's motion to dismiss Petitioner's removal proceedings.  ECF No. 22-1, Supplemental Declaration of Deportation Officer Calvin Choi ("Choi Decl.") ¶ 5.  Petitioner did not appeal the decision, and the window to do so has lapsed.  *Id.*  Accordingly, Petitioner is not currently in removal proceedings.  *Id.*

On September 18, 2025, the Court issued a preliminary injunction enjoining the Government from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decision maker, transferring Petitioner out of the district, and deporting Petitioner pending these habeas proceedings.  ECF No. 17.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III. DISCUSSION

#### A. Mootness

As a threshold matter, the Government contends that the habeas petition is moot because Petitioner's removal proceedings were dismissed and DHS has no basis to assert detention authority over her. Return at 2. The Government further asserts that Petitioner has not presented any possible collateral consequences that can be redressed by her habeas petition. Return at 2–3. Petitioner takes the position that the habeas petition is not moot because she continues to be vulnerable to unlawful detention. Traverse at 1–3.

"A federal court's jurisdiction is limited to cases or controversies." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997), *as amended* (Sept. 16, 1997). "A claim is moot if it has lost its character as a present, live controversy." *Id.* "A case that becomes moot at any point during the proceedings is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385–86 (2018) (internal quotation marks and citation omitted). "There are, however, four major exceptions to the mootness doctrine, for (1) collateral legal consequences; (2) wrongs capable of repetition yet evading review; (3) voluntary cessation; and (4) class actions where the named party ceases to represent the class." *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005). Accordingly, "[f]or a habeas petition to continue to present a live controversy after the petitioner's release or deportation, . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Abdala v. INS*, 488 F.3d 1061, 1064 (9th Cir. 2007)

In arguing that the petition is moot, the Government contends that Petitioner's case is similar to *Meza v. Bonnar*, No. 18-cv-02708-BLF, 2022 WL 2954333 (N.D. Cal. July 26, 2022). Return at 3. There, the petitioner filed a habeas petition asking this Court to enjoin ICE from detaining her during the pendency of her removal proceedings without a due process hearing. *Meza*, 2022 WL 2954333, at *4. Before the habeas petition had been resolved, however, the petitioner successfully moved to dismiss the removal proceedings. *Id.* at *3. The Court found that the petition was moot because the petitioner had already obtained the relief she sought, namely due process protections during the pendency of her removal proceedings. *Id.* at *4. Because those

proceedings had been dismissed, the petitioner "no longer ha[d] a liberty interest in conditional release pending those proceedings." *Id.* at *5. Nor were there any collateral consequences redressable by the petition because the possibility of future DHS detention was too speculative. *Id.* at *6.

The Government argues that like in *Meza*, the relief Petitioner seeks is tethered to the pendency of the removal proceedings and the possibility of future detention or immigration proceedings is speculative. Return at 3. The Court disagrees. When Petitioner filed her habeas petition, she asserted a constitutionally-protected liberty interest arising from her conditional release on bond. *See* Pet. ¶¶ 58–67 (asserting that Petitioner's re-detention would violate due process because she was released on her own recognizance). Accordingly, the relief she seeks does not flow from the pendency of her now-dismissed removal proceedings but is instead based on her constitutional interest in remaining free from detention, whatever her status under the statutory framework. As the Court will discuss in more detail below, that liberty interest arose because of the decision of the same Government that then moved to dismiss the removal proceedings. *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). As Petitioner correctly argues, Traverse at 3, *Meza* is also distinguishable because there, the petitioner herself "successfully moved to terminate the removal proceedings," 2022 WL 2954333, at *3. Here, by contrast, the Government (rather than Petitioner) moved to dismiss the removal proceedings. *See* Razalan Decl. ¶ 7; Choi Decl. ¶ 5. Because Petitioner has not "obtained all the relief sought in the petition," *Meza*, 2022 WL 2954333, at *4, namely an injunction prohibiting the Government from re-detaining her absent a due process hearing, the petition is not moot.

Nor does the Government's assertion that it has no basis to detain Petitioner—for which it cites no authority—moot this action. *See* Return at 2. Petitioner's habeas petition is based on *unlawful* detention. Given that the Government has declined to offer any meaningful assurance that it will not unlawfully detain Petitioner absent a court order, the petition is not moot. *See*

*Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1006 (N.D. Cal. 2025) ("DHS has not disavowed its intent to re-arrest her upon the expiration of the preliminary injunction. There thus remains a strong possibility that DHS will re-detain her after a final judgment in the government's favor."). The Government also notes that it "declined" to pursue expedited removal after Petitioner's removal proceedings were dismissed. Return at 3. But whether the Government has sought to commence expedited removal proceedings is separate from the issue of whether her re-detention without due process is lawful. The Court concludes the petition is not moot.

### B. Merits of the Petition

Turning to the merits, Petitioner argues that her substantive and procedural due process rights would be violated by re-detention without a custody hearing before a neutral arbiter at which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community. Pet. ¶¶ 58–67; Traverse at 3–8. The Government does not contest the merits of the petition.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

#### 1. Petitioner's Protected Liberty Interest

The threshold issue is whether Petitioner has a constitutionally protected liberty interest such that the Due Process clause applies. She argues that her release from immigration custody by the affirmative act of the Government gave rise to a protected liberty interest. Traverse at 3–6. The Court agrees.

8 U.S.C. § 1225 provides that an alien who "arrives in the United States," or "[is] present" in this country but "has not been admitted," is "an applicant for admission." 8 U.S.C. § 1225(a)(1). 8 U.S.C. § 1225(b)(1)(A)(i) provides that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for

United States District Court
Northern District of California

United States District Court
Northern District of California

asylum under section 1158 of this title or a fear of persecution." § 1225(b)(1) applies to an alien who "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). 8 U.S.C. § 1225(b)(2)(A) provides that "[s]ubject to [scenarios that do not apply here], in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." While "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)[,] [i]t also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Under 8 U.S.C. § 1226(a), where an alien is "arrested and detained pending a decision on whether the alien is to be removed from the United States," the Attorney General "may continue to detain the arrested alien," "may release the alien" on "bond," or "may release the alien" on "conditional parole." 8 U.S.C. § 1226(a)(1)–(2).

The record demonstrates that the Government placed Petitioner in full removal proceedings under 8 U.S.C. § 1229a and released her under § 1226(a). *See* Notice to Appear; 2023 Warrant; Notice of Custody Determination; Order of Release. Each document was explicitly authorized pursuant to section 236 of the Immigration and Nationality Act—i.e., § 1226. Prior to the events leading to this habeas petition, the Government has consistently treated Petitioner as subject to detention on a discretionary basis under § 1226(a). 2025 Warrant; *Garro Pinchi*, 813 F. Supp. 3d at 994 ("§ 1226(a) affords the government significant discretion").

The Government's election to place Petitioner in full removal proceedings under § 1229a and release Petitioner under § 1226(a) provided Petitioner with a liberty interest that is protected by the Due Process Clause. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a

noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *He v. Lyons*, No. 25-cv-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond."). Petitioner's protected liberty interest has not been undermined by the Government's dismissing her removal proceedings and resulting change to her legal status. *See Zadvydas*, 533 U.S. at 693 ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

### 2. Procedural Due Process

Petitioner contends that her re-detention without a hearing before a neutral decisionmaker would violate her procedural due process rights. Pet. ¶¶ 63–67; Traverse at 3–6. The Government does not respond to this point.

In *Mathews v. Eldridge*, the Supreme Court explained that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The Supreme Court identified three factors relevant to the due process inquiry—(1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335. The Ninth Circuit has recognized that many courts have applied the *Mathews* test in considering due process challenges in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). This Court joins others in the Ninth Circuit in applying the *Mathews* factors to determine the constitutionally sufficient procedures to protect Petitioner's liberty interest. *See, e.g.*, *Garro Pinchi*, 792 F. Supp. 3d at 1033–36; *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1110–11 (E.D. Cal. 2025).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private

interest in remaining out of immigration custody because she has been released pending civil removal proceedings. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Petitioner, who has serious medical conditions, has a significant interest in remaining in her home, being with her family members, and monitoring her health out of immigration custody. *See Garro Pinchi*, 792 F. Supp. 3d at 1033. "[Her] detention denies [her] that freedom." *Omer G.G.*, 815 F. Supp. 3d at 1111.

As to the second *Mathews* factor, the Court finds that there is a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would guard against. Where, as here, "there is a substantial liberty interest at stake . . . the Due Process Clause requires a pre-deprivation bond hearing where the government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (collecting cases). The Government has not offered any evidence that Petitioner poses a flight risk or a danger to the community. To the contrary, after Petitioner was released from immigration custody in December 2023, she attended her master calendar hearing with the San Francisco Immigration Court 20 months later, in August 2025. *See* Maya Decl. ¶¶ 2–3; Gonzalez Montes De Oca Decl. ¶ 3; Razalan Decl. ¶ 7. The second *Mathews* factor thus favors Petitioner.

As to the third *Mathews* factor, the Government has a minimal interest in detaining Petitioner without a hearing. Petitioner has no criminal record and attended the required hearing in immigration court after DHS released her on her own recognizance in December 2023. *See* Pet. ¶ 51; Maya Decl. ¶ 3; Gonzalez Montes De Oca Decl. ¶ 3; Razalan Decl. ¶ 7. Petitioner is gainfully employed in California. Pet. ¶ 50. The Government does not claim any change in material circumstances that would warrant reassessment of Petitioner's fight risk or danger to the community. Moreover, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Garro Pinchi*, 792 F. Supp. 3d at 1036. On balance, the Government's interest in detaining Petitioner without a hearing is low.

Having determined that each of the *Mathews* factors favors Petitioner, the Court concludes

that if the Government wishes to re-detain Petitioner, it must provide her with the pre-detention hearing before a neutral decisionmaker required by due process. She may be detained only if the Government proves by clear and convincing evidence at such a hearing that she poses a flight risk or danger to the community. *See Rodriguez Diaz*, 53 F.4th at 1199 (summarizing Ninth Circuit opinions—and calling them into question on separate grounds—which hold that due process requires that the government to bear the burden of proving, by clear and convincing evidence, that a noncitizen poses a risk of flight or dangerousness before she can be detained).

### 3. Substantive Due Process

Petitioner argues that re-detention would violate her substantive due process rights. Pet ¶¶ 58–62. Return at 6–8. Because the procedural due process issue is dispositive, the Court need not address the substantive due process claim. *See Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *4 (N.D. Cal. Dec. 18, 2025).

### C. The Impact of a Final Order of Removal

The Government contends that any relief granted by the Government must allow Petitioner's re-detention upon a final order of removal. Return at 3–4. Petitioner "acknowledges that by statute, Respondents may detain her for the 90-day period following a final removal of order." Traverse at 8–9. All agree that detention during a 90-day "removal period" after the entry of a final order of removal is mandatory. *See* 8 U.S.C. § 1231(a)(1)–(2). After this period expires, ICE has discretion to continue detaining the alien or to release pending removal. 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) did not authorize the Government to indefinitely detain a removable alien, 533 U.S. at 689. A detention period of less than six months is presumptively reasonable. *Id.* at 701. For detention to continue beyond six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If Petitioner becomes subject to a final order of removal, the Government may detain her for the sole purpose of executing removal. In this event, Respondents must provide a bond hearing in the timeframe required by law.

United States District Court
Northern District of California

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The petition for writ of habeas corpus is GRANTED.

(2) Respondents are PERMANENTLY ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

(3) If Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal pursuant to 8 U.S.C. 1231(a)(2)(A). In such an event, Respondents SHALL provide a bond hearing in the timeframe required by law.

(4) The Clerk of the Court SHALL close the case.

Dated: April 29, 2026

_____
BETH LABSON FREEMAN
United States District Judge

11